[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present appeal was taken from the action of the Zoning Board of Appeals of the Town of Branford in refusing to overrule the zoning enforcement officer of the Town of Branford who had certified the proposed construction of a Wal-Mart shopping complex in that town.
The appeal was originally taken by Martin Slade and Richard Shanahan against the Zoning Board of Appeals, Wal-Mart Stores, Inc. and the trust who is the owner of the proposed site of the Wal-Mart complex.
The appeal of Mr. Shanahan was withdrawn after the defendants had filed a motion to dismiss questioning his aggrievement. CT Page 12795
CHRONOLOGY OF EVENTS
On November 18, 1993 after a public hearing the Planning and Zoning Commission of the Town of Branford approved Wal-Mart's application for a special exception for a 125,388 square foot shopping center with conditions, including an administrative review to be held at a later date to determine that all such conditions had been met.
On January 25, 1994 members of the Branford community appealed that part of the Commission's November 18, 1993 resolution relating to traffic issues. On May 4, 1994, the traffic appeal was dismissed for lack of standing. On July 19, 1994 an application was approved by the State Traffic Commission pursuant to Connecticut General Statutes § 14-311.
On September 1, 1994, the Commission held an administrative review at which time it determined that the conditions in the November 18, 1993 resolution had been met. On September 7, 1994, legal notice of the administrative review was published and no appeal was taken from this determination. On November 16, 1994, the zoning enforcement officer certified that the proposed construction complied with the zoning approval by the Commission and issued a certificate of zoning compliance. On November 28, 1994, Mr. Slade and Mr. Shanahan filed a notice of appeal to the zoning board of appeals of the action by the zoning enforcement officer. This notice of appeal is contained in a letter dated November 28, 1994 signed by Bernard A. Pellegrino and contained in the return of record as Exhibit 33. That letter in paragraph 5 states as the reason for appeal "see attached letter to zoning enforcement officer dated October 5, 1994."
The October 5, 1994 letter is contained in the return of record as Exhibit 29. It is a letter from Bernard Pellegrino to Ms. Justine Gillen, the Branford Zoning Enforcement Officer.
The court finds the October 5, 1994 letter somewhat difficult to summarize. The court agrees with the defendants that to some extent an attempt was made to use the vehicle of appealing from Ms. Gillen's issuance of the certificate of compliance to challenge the underlying Planning and Zoning Commission action.
As the court reads the October 5, 1994 letter it appeals to present the following issues: (1) "With respect to the condition CT Page 12796 of approval pertaining to traffic, the applicant failed to meet such condition in that the number of intersections studied was limited, a drop in level of service was shown at the intersection of Cedar Street and Route 1, and Saturday midday traffic conditions were not even analyzed in the applicant's traffic study. The Planning and Zoning Commission acted illegally in finding this condition met in its administrative review or September 1, 1994." And (2) the plaintiff's claim that the "administrative review" procedure is not addressed or allowed in the regulations, that it effectively bypasses the public hearing requirement of § 32.2 of the regulations, that the plan as presented originally in 1993 and as reviewed in September of 1994 was, in fact, so sufficiently different that a public hearing should have been held in 1994, and finally that the administrative review procedure denied the Branford citizenry an important right to a public hearing on this application.
On December 16, 1994, the plaintiff filed an amended notice asking the zoning board of appeals to review the Planning and Zoning Commission's findings regarding storm water management improvements and the state traffic authority's review of traffic issues.
On January 24, 1995, the zoning board of appeals held a public hearing on the appeal from the action of the zoning enforcement officer.
On January 31, 1995, the board held a special meeting at which it reviewed the entire application, including plans, to determine whether the zoning enforcement officer had properly carried out her function of determining that the plans conformed to the site plan approval and conditions.
On February 7, the board determined at a special meeting that it lacked "jurisdiction" to review life Commission's prior determinations.
AGGRIEVEMENT
In the instant case the court finds that the evidence fails to support a conclusion that the plaintiff, Martin Slade, is classically aggrieved. The facts do establish that Martin Slade owns a condominium unit and that his individual condominium unit is located more than 100 feet from the Wal-Mart property. The facts are equally clear that the property of the Condominium CT Page 12797 Association which would be a common element to Mr. Slade abuts the Wal-Mart property.
It appears to the court that the question of whether or not an interest in the common elements of the Condominium Association are sufficient to establish statutory aggrievement has never been addressed by the Appellate or Supreme Court of Connecticut.
Ownership of a condominium as a basis for statutory aggrievement appears to have been approved in Stryker v. ZoningBoard of Stonington, No. 511360 (August 22, 1991, 1991 CTSUP 6927). Likewise it was approved in Fromer v. 200 Post Associates, No. 513227 (October 23, 1991, 1991 CTSUP 9015). Neither Stryker
nor Fromer make it absolutely clear whether the purported aggrieved party owned a unit within 100 feet or the property in question or simply had an undivided interest in common property. However, it appears that in both Stryker and Fromer the unit was actually within 100 feet, thus in Judge Leuba's opinion in Fromer
he notes:
 "Also at the hearing, on the issue of aggrievement, the plaintiff offered various testimony and exhibits indicating the proximity of a condominium unit owned by him to the premises subject to the permit involved in this case."
The matter seems to have been addressed in more detail by Judge Koletsky in Fromer v. 200 Post Associates, 4 Conn. Sup. CT Reports 154, 155 (1989). Judge Koletsky clearly held that the owner of a condominium unit has a sufficient property interest as an owner of an undivided interest in the common areas to be statutorily aggrieved. Judge Koletsky wrote:
 "Under Connecticut General Statutes § 47-68a(c) a `unit owner' is a person who holds both equitable and legal title to a condominium and has an undivided interest in the common elements specified in the declaration. `Common elements' means all portions of the condominium other than the units. Connecticut General Statutes § 47-68a(e). `Each unit owner shall own an undivided interest in the common elements'. Connecticut General Statutes § 47-74. The term owner is generally defined with reference to title, Smith v. Planning and Zoning Board, 3 Conn. App. 550, 553 (1985), aff'd 203 Conn. 317, 323 (1987). Accordingly, the court finds that a condominium owner is `a person owning land' within the meaning of Connecticut General Statutes § 8-8 and thus has CT Page 12798 standing to allege aggrievement so long as any of the condominium real estate is within 100 feet of the land which is the subject of the zoning agency's action."
The court notes that Judge Koletsky relied on the Condominium Act § 47-68a et seq. to arrive at his conclusion. There is no evidence before the court to show whether the condominium in question in the instant case was formed under the Condominium Act or whether it was formed under the Common Interest Ownership Act, § 47-200 et seq. However the court sees no substantial difference in the relationship between a unit owner and his interest in common elements under either act.
The court does note that under § 42-202 of the General Statutes condominium is defined as "a common interest community in which portions of the real property are designated for separate ownership and the remainder of the real property is designated for common ownership solely by the owners of those portions. A common interest community is not a condominium unless the undivided interest in the common elements are vested in the unit owners." The same section defines "cooperative" as "a common interest community in which the real property is owned by an association, each of whose members is entitled by virtue of his ownership interest in the association to exclusive possession of a unit."
The only higher Court authority remotely relevant to the present issue which the trial court could discover is Gentry v.Norwalk, 196 Conn. 596 (1985).
Gentry concerned a vote by citizens in Norwalk to establish a historic district pursuant to § 7-147b(g). The question before the Supreme Court was whether each condominium unit owner was entitled to a full vote on the question, or whether each condominium unit owner was entitled to the pro rata share of one vote which was represented by his pro rata interest in the common elements. The Gentry court concluded:
 "In its statutory context the condominium is of relatively recent origin offering, as it does, a means of affording some of the benefits of property ownership without some of its burdens. The defendants in this case recognize that condominium ownership interests are "unique" and that the plaintiffs concede that these interests "do not fall neatly within any of the categories" stated in the historic district voting CT Page 12799 provision. . . . The intermixture of the historic district and the condominium statutes on this specific issue of vote allocation generates relevant considerations which on, analysis, do not precisely mesh or accurately fit any analytical mold. Given the argued tension between these two statutes, our construction, which involves seeking legislative purpose, strives for the application of common sense to achieve a sensible result in the case." [citation omitted] Gentry at 603.
In his opinion Justice Healey continued:
 "In construing a statute, common sense must be used and we must assume that the legislature intended to accomplish a reasonable and rational result. . . . A statute, of course, is not to be interpreted to thwart its purpose. . . . We can best reach the meaning here as always by recourse to the underlying purpose, and, with that as a guide, by trying to project upon the specific occasion how we think persons, actuated by such a purpose, would have dealt with it, if it had been presented to them at the time. . . ." Gentry at 606-607.
In Gentry, the Supreme Court eventually concluded that each condominium owner was entitled to 1/67th of a vote, so that the total votes of the sixty-seven owners would equal one full vote for the entire complex.
It appears to the court that the plaintiff would argue fromGentry that it stands for the proposition that a condominium owner has an interest in real estate including an interest in the common elements. The defendant would argue from Gentry that it stands for the proposition that a condominium complex should be treated as a single unit for purposes or statutory construction and accordingly an interest in the common elements would perhaps not form the basis for aggrievement.
Justice Healey foreseeing the complexities that faced condominiums in the future included the following in his opinion:
 "The interaction of the historic district and the condominium statutes in this appeal, we point out, will not constrain us in deciding how condominium interest may be characterized in other context." Gentry at 613.
The court takes judicial notice of the fact that condominium associations control the common elements and establish the rules CT Page 12800 and regulation of condominium complexes. The court acknowledges a certain lack of logic in allowing a single unit owner to claim statutory aggrievement to appeal the zoning approval of an abutting project. Such an appeal could conceivably be contrary to the wishes of all the other unit owners who would control the association and the use of common elements. Nevertheless §47-202(8) makes it clear that common elements are "designated for common ownership solely by the owners of those portions." Section8-8 defines "aggrieved person" as "any person owning land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the board."
The court cannot escape a finding that the plaintiff owns an interest in the common elements under the Connecticut Common Interest Ownership Act and that nothing in § 8-8 requires any particular interest as a condition of aggrievement. Accordingly, the court finds the plaintiff Martin Slade to be aggrieved.
DISCUSSION
Although the court finds the zoning board of appeals decision, citing lack of jurisdiction, to be somewhat inartful in its wording, the court affirms the holding of the zoning board of appeals which affirmed the action of the zoning enforcement officer. The Connecticut General Statutes provide that the zoning board of appeals may hear and decide appeals where it is alleged that there is an error in an order, requirement or decision by the official charged with the enforcement of the zoning ordinance or zoning regulations. Neither the board not the enforcement officer call review decisions of the zoning commission in granting a special exception. Castellon v. Board of ZoningAppeals of Branford, 221 Conn. 374, 382 (1992). Since the only appeal which was taken from the Commission's granting of the special exception was dismissed for lack of aggrievement, the legality of the granting of the special exception was not before the zoning enforcement officer, was not before the Zoning Board of Appeals, and is not before this court.
The October 5, 1994 letter which forms the basis for this appeal requested the zoning enforcement officer to "consider the following illegalities and irregularities in the planning and zoning commission's proceedings regarding P Z special exception application 93-7.12 before issuing a zoning permit." Clearly, to the extent that that request was asking the enforcement officer to review the legality of the special exception, the enforcement CT Page 12801 officer lacked authority to do so and the matter could not be appealed to the board of appeals or to this court. The remaining two claims, first, that the planning and zoning commission made an inadequate traffic study and, second, that the commission's administrative review procedure exceeded the authority of the regulations and was illegal likewise were not subject to review by the enforcement officer, the board of appeals, or this court. In making its administrative review the commission concluded that all applicable provisions of the special permit were complied with. The court recognizes that that decision may itself have been appealable but it was not appealed. The court further recognizes that the "administrative review" provisions may be subject to collateral challenge in some appropriate proceeding but no such challenge has taken place. However the court finds that the zoning enforcement officer make no error in reviewing these proceedings nor did she make any error in issuing the certificate of compliance.
The court finds significance in the language contained in Exhibit 37 page 2 which outlines the plaintiffs' position in the appeal to the zoning board of appeals. That letter dated January 24, 1995 states on page 5:
 "The sole purpose of this appeal is to correct the injustice created by the Planning and Zoning Commission, in not permitting the public with an opportunity to review, and comment on, revisions to the Wal-Mart application and plans which occurred after its public hearing. The failure to require a public hearing on these revisions violates fundamental rights of due process accorded by our laws and your zoning regulations, to the citizenry of Branford."
This court makes no finding on the legal accuracy of the allegation contained in the foregoing quote because the claim is not appropriately raised in this appeal. However, the court does find that the foregoing quote from the plaintiffs' attorney's letter accurately summarizes the proceedings which citizens were attempting to bring before the zoning board of appeals. Whether or not these sentiments would be of merit in another type of proceeding is not decided here. The sentiments do not form the subject matter of anything within the jurisdiction of the zoning enforcement officer, nor do they form the subject matter of anything which may be appealed from the zoning enforcement officer to the zoning board of appeals. CT Page 12802
The court finds no error in the action of the zoning board of appeals and accordingly the appeal is dismissed.
Kevin E. Booth, Judge